IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

SHERRI L. STOREY,

                Plaintiff,

vs.                          Case No. 13-2432-SAC

CAROLYN W. COLVIN,
Acting Commissioner of
Social Security,

                Defendant.


MEMORANDUM AND ORDER

This is an action reviewing the final decision of the Commissioner of Social Security denying the plaintiff supplemental security income payments.  The matter has been fully briefed by the parties.

**I.  General legal standards**

The court's standard of review is set forth in 42 U.S.C. § 405(g), which provides that "the findings of the Commissioner as to any fact, if supported by substantial evidence, shall be conclusive."  The court should review the Commissioner's decision to determine only whether the decision was supported by substantial evidence and whether the Commissioner applied the correct legal standards.  Glenn v. Shalala, 21 F.3d 983, 984 (10th Cir. 1994).  Substantial evidence requires more than a scintilla, but less than a preponderance, and is satisfied by

such evidence that a reasonable mind might accept to support the conclusion.  The determination of whether substantial evidence supports the Commissioner's decision is not simply a quantitative exercise, for evidence is not substantial if it is overwhelmed by other evidence or if it really constitutes mere conclusion.  Ray v. Bowen, 865 F.2d 222, 224 (10th Cir. 1989).  Although the court is not to reweigh the evidence, the findings of the Commissioner will not be mechanically accepted.  Nor will the findings be affirmed by isolating facts and labeling them substantial evidence, as the court must scrutinize the entire record in determining whether the Commissioner's conclusions are rational.  Graham v. Sullivan, 794 F. Supp. 1045, 1047 (D. Kan. 1992).  The court should examine the record as a whole, including whatever in the record fairly detracts from the weight of the Commissioner's decision and, on that basis, determine if the substantiality of the evidence test has been met.  Glenn, 21 F.3d at 984.

The Social Security Act provides that an individual shall be determined to be under a disability only if the claimant can establish that they have a physical or mental impairment expected to result in death or last for a continuous period of twelve months which prevents the claimant from engaging in substantial gainful activity (SGA).  The claimant's physical or mental impairment or impairments must be of such severity that

2

they are not only unable to perform their previous work but cannot, considering their age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy.  42 U.S.C. § 423(d).

The Commissioner has established a five-step sequential evaluation process to determine disability.  If at any step a finding of disability or non-disability can be made, the Commissioner will not review the claim further.  At step one, the agency will find non-disability unless the claimant can show that he or she is not working at a "substantial gainful activity."  At step two, the agency will find non-disability unless the claimant shows that he or she has a "severe impairment," which is defined as any "impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities."  At step three, the agency determines whether the impairment which enabled the claimant to survive step two is on the list of impairments presumed severe enough to render one disabled.  If the claimant's impairment does not meet or equal a listed impairment, the inquiry proceeds to step four, at which the agency assesses whether the claimant can do his or her previous work; unless the claimant shows that he or she cannot perform their previous work, they are determined not to be disabled.  If the claimant survives step four, the fifth and final step

requires the agency to consider vocational factors (the claimant's age, education, and past work experience) and to determine whether the claimant is capable of performing other jobs existing in significant numbers in the national economy. Barnhart v. Thomas, 124 S. Ct. 376, 379-380 (2003).

The claimant bears the burden of proof through step four of the analysis. Nielson v. Sullivan, 992 F.2d 1118, 1120 (10th Cir. 1993). At step five, the burden shifts to the Commissioner to show that the claimant can perform other work that exists in the national economy. Nielson, 992 F.2d at 1120; Thompson v. Sullivan, 987 F.2d 1482, 1487 (10th Cir. 1993). The Commissioner meets this burden if the decision is supported by substantial evidence. Thompson, 987 F.2d at 1487.

Before going from step three to step four, the agency will assess the claimant's residual functional capacity (RFC). This RFC assessment is used to evaluate the claim at both step four and step five. 20 C.F.R. §§ 404.1520(a)(4), 404.1520(e,f,g); 416.920(a)(4), 416.920(e,f,g).

## II. History of case

On June 28, 2012, administrative law judge (ALJ) James Harty issued his decision (R. at 12-25). Plaintiff alleges that she had been disabled since December 31, 2005 (R. at 12). At step one, the ALJ found that plaintiff did not engage in substantial gainful activity since the application date of

4

December 2, 2009 (R. at 14).  At step two, the ALJ found that
plaintiff had the following severe impairments:  degenerative
changes of the lumbar spine, obesity, depressive disorder not
otherwise specified, post-traumatic stress disorder and
generalized anxiety disorder with panic symptoms (R. at 14).  At
step three, the ALJ determined that plaintiff's impairments do
not meet or equal a listed impairment (R. at 15).  After
determining plaintiff's RFC (R. at 17), the ALJ determined at
step four that plaintiff has no past relevant work (R. at 23).
At step five, the ALJ found that plaintiff can perform jobs that
exist in significant numbers in the national economy (R. at 23-
24).  Therefore, the ALJ concluded that plaintiff was not
disabled (R. at 24).

**III.  Are the ALJ's physical RFC findings supported by
substantial evidence?**

According to SSR 96-8p, the RFC assessment "must include a
narrative discussion describing how the evidence supports each
conclusion, citing specific medical facts...and nonmedical
evidence."  The ALJ must explain how any material
inconsistencies or ambiguities in the evidence in the case
record were considered and resolved.  The RFC assessment must
always consider and address medical source opinions.  If the RFC
assessment conflicts with an opinion from a medical source, the
ALJ must explain why the opinion was not adopted.  SSR 96-8p,

1996 WL 374184 at *7. SSR rulings are binding on an ALJ. 20 C.F.R. § 402.35(b)(1); Sullivan v. Zebley, 493 U.S. 521, 530 n.9, 110 S. Ct. 885, 891 n.9, 107 L. Ed.2d 967 (1990); Nielson v. Sullivan, 992 F.2d 1118, 1120 (10th Cir. 1993). When the ALJ fails to provide a narrative discussion describing how the evidence supports each conclusion, citing to specific medical facts and nonmedical evidence, the court will conclude that his RFC conclusions are not supported by substantial evidence. See Southard v. Barnhart, 72 Fed. Appx. 781, 784-785 (10th Cir. July 28, 2003). The ALJ's decision must be sufficiently articulated so that it is capable of meaningful review; the ALJ is charged with carefully considering all of the relevant evidence and linking his findings to specific evidence. Spicer v. Barnhart, 64 Fed. Appx. 173, 177-178 (10th Cir. May 5, 2003). It is insufficient for the ALJ to only generally discuss the evidence, but fail to relate that evidence to his conclusions. Cruse v. U.S. Dept. of Health & Human Services, 49 F.3d 614, 618 (10th Cir. 1995). When the ALJ has failed to comply with SSR 96-8p because he has not linked his RFC determination with specific evidence in the record, the court cannot adequately assess whether relevant evidence supports the ALJ's RFC determination. Such bare conclusions are beyond meaningful judicial review. Brown v. Commissioner of the Social Security Administration, 245 F. Supp.2d 1175, 1187 (D. Kan. 2003).

The ALJ found that plaintiff could perform light work,
including carrying 20 pounds occasionally and 10 pounds
frequently.  She can stand/walk for 6 hours and sit for 6 hours
in an 8 hour workday.  She can frequently balance, stoop, kneel,
crouch, crawl and climb ramps and stairs.  She can occasionally
climb ladders, ropes and scaffolds, and must avoid concentrated
exposure to dangerous machinery, unprotected heights, and
vibration.  She can perform simple, routine, repetitive tasks
not performed in a fast-paced production environment, or as an
integral part of a team.  She can occasionally interact with
coworkers and the general public (R. at 17).

In making his physical RFC findings, the ALJ gave
"substantial" weight to the opinions of Dr. Parsons (R. at 21).
Dr. Parsons, a non-examining physician, prepared a physical RFC
assessment after reviewing the record (R. at 309-316).  The
record included two consultative examinations, by Dr. Al-Shathir
(R. at 251), and Dr. Hughey (R. at 281-283).  The narrative of
Dr. Parsons specifically discussed the report of Dr. Hughey (R.
at 316).  The ALJ included the limitations set forth by Dr.
Parsons in his RFC findings, but also included additional
limitations of exposure to dangerous machinery and unprotected
heights  (R. at 21).

The ALJ discussed the consultative evaluation by Dr. Al-
Shathir (R. at 18).  After examining plaintiff on April 5, 2010,

7

Dr. Al-Shathir diagnosed plaintiff with chronic back pain with no significant loss of range of motion or neurological deficit; he also noted that x-rays showed moderate degenerative arthritis change in her spine (R. at 251).

The ALJ also discussed the consultative examination of Dr. Hughey, dated October 23, 2010 (R. at 18-19).  Dr. Hughey found that plaintiff had mild difficulty with heel and toe walking, and moderate difficulty squatting and arising from the sitting position.  He found pain in the lumbar region with preserved range of motion.  No asymmetrical reflex, sensory, or motor deficits were noted.  Gait and station were found to be stable (R. at 283).

Plaintiff argues that the ALJ erred by relying on the opinions of Dr. Parsons.  Unlike Fleetwood v. Barnhart, 211 Fed. Appx. 736, 740 (10th Cir. Jan. 4, 2007), this is not a case in which the ALJ only relied on a check-the-box form with little or no explanation for the conclusions reached.  Dr. Parsons provided a narrative summary of the evidence in support of his opinions (R. at 316).  Furthermore, Dr. Parsons had before him two consultative examinations by Dr. Al-Shathir and Dr. Hughey, and Dr. Parsons discussed the report of Dr. Hughey in support of his RFC findings.  Nothing in either consultative report would indicate that plaintiff has limitations not contained in the assessment by Dr. Parsons or in the ALJ's RFC findings.

Plaintiff alleges disability beginning December 31, 2005. However, plaintiff does not cite to any medical opinion evidence indicating that plaintiff has limitations not contained in the assessment by Dr. Parsons or in the ALJ's RFC findings.  When the ALJ does not need to reject or weigh evidence unfavorably in order to determine a claimant's RFC, the need for express analysis is weakened.  Wall v. Astrue, 561 F.3d 1048, 1068-1069 (10th Cir. 2009); Howard v. Barnhart, 379 F.3d 945, 947 (10th Cir. 2004).

Plaintiff argues that the ALJ erred by failing to state what weight he accorded to the opinions of Dr. Al-Shathir and Dr. Hughey.  As noted above, the ALJ did discuss both consultative examinations (R. at 18-19).  The physicians found low back and/or neck pain, and no significant loss of range of motion or reflex, sensory, neurological or motor deficits (R. at 251, 283).  However, because these two consultative evaluations do not set forth any specific physical limitations, or discuss the effect of her limitations on her ability to work, the failure to assign a specific weight to their conclusions does not represent harmful error.  Keyes-Zachary v. Astrue, 698 F.3d 1156, 1164 (10th Cir. 2012).  It is harmless error to fail to assign a specific weight to a medical report that contains no findings, conclusions or opinions that contradict the ALJ's RFC

findings, or that do not set forth limitations not contained in the ALJ's RFC findings.

Plaintiff argues that the ALJ erred in his consideration of the opinions of various treatment providers.  On August 23, 1993, a therapist stated that plaintiff is currently unable to hold steady employment (R. at 324).  On September 22, 1993, Dr. Barker stated that, after seeing plaintiff only one time for an evaluation on February 17, 1993, plaintiff was at that time unable to do much of anything other than hold herself together (R. at 325).  Finally, on February 8, 1996, Dr. Johnson opined that plaintiff should be exempt from participation in a training and employment program, and diagnosed plaintiff with chronic cervical bio-mechanical malalignments with hypermobility/instability precipitating cervico-cranial involvement and complicated by post traumatic stress disorder (R. at 326).

The ALJ noted these opinions, but gave them little weight because the treatment providers provided no explanation for their findings, the opinions are only on the ultimate issue of disability, and they were made in 1993 and 1996.  None of these providers have treated plaintiff since the 1990's, and there is no indication in the file that such opinions are indicative of plaintiff's current level of functioning (R. at 21).  Plaintiff alleged her disability began on December 31, 2005, 10-13 years

after these medical reports.  Medical reports that many years
before the alleged onset of disability, especially when there is
no medical evidence that those reports represent plaintiff's
level of functioning on or after December 31, 2005, are of
little or no value in ascertaining plaintiff's limitations on or
after December 31, 2005.

The opinions from these treatment providers are only on the
ultimate issue of disability.  None of these treatment providers
set forth any physical or mental limitations for the plaintiff.
The court finds no error in giving little weight to conclusory
opinions on the ultimate issue of disability.  See Franklin v.
Astrue, 450 Fed. Appx. 782, 785 (10th Cir. Dec. 16, 2011)(court
held that other than conclusory statement of total disability,
the doctor did not express any opinion concerning claimant's
physical or mental capabilities; ALJ discounted opinion because
it was unsupported by medical records and invaded the ultimate
issue of disability which is reserved to Commissioner; the court
concluded that the ALJ decision to give medical opinion little
weight was supported by substantial evidence).[1]  The ALJ clearly
provided valid reasons for giving little weight to those very
dated and conclusory opinions.

---

[1] Treating source opinions on issues that are reserved to the Commissioner, including whether a claimant is disabled, should be carefully considered and must never be ignored, but they are never entitled to controlling weight or special significance.  SSR 96-5p, 1996 WL 374183 at *2-3.

In making his mental RFC findings, the ALJ gave substantial weight to two mental RFC assessments (R. at 22). The first assessment, by Dr. Maxfield, and dated May 3, 2010 (R. at 259-275), and the second by Dr. Wilkinson, and dated December 1, 2010 (R. at 290-306). Dr. Maxfield provided an extensive narrative in support of his findings (R. at 261, 275), and Dr. Wilkinson provided a narrative in support of her findings (R. at 302, 306). Thus, unlike Fleetwood v. Barnhart, 211 Fed. Appx. 736, 740 (10th Cir. Jan. 4, 2007), this is not a case in which the ALJ only relied on a check-the-box form with little or no explanation for the conclusions reached. Furthermore, Dr. Maxfield considered the mental status examination performed by Dr. Mintz on April 12, 2010 (R. at 254-256, 275), and Dr. Wilkinson considered the mental status examination performed by Dr. Mintz on October 22, 2010 (R. at 278-280, 302). Both reports by Dr. Mintz indicate that plaintiff may have difficulty relating to others, but is able to understand simple and intermediate instructions. He also noted that her concentration capacity appears adequate (R. at 256, 279). The findings of Dr. Maxfield and Dr. Wilkinson[2] are consistent with the opinions of Dr. Mintz.[3]

---

[2] Dr. Maxfield stated that plaintiff had moderate limitations in the ability to work with others without being distracted by them, and in the ability to interact appropriately with the general public (R. at 259-260). Dr. Maxfield also stated that it would be in plaintiff's best interests to limit her interactions with the public and coworkers (R. at 261). Dr. Wilkinson opined that plaintiff had moderate limitations in the ability to understand, remember and carry

The ALJ limited plaintiff to performing simple, routine tasks not performed in a fast-paced production environment, or as an integral part of a team, and can occasionally interact with coworkers and the general public.  Thus, the ALJ's mental RFC findings are consistent with and reflect the opinions of Dr. Mintz, Dr. Maxfield and Dr. Wilkinson.  There is no medical opinion evidence indicating that plaintiff has mental limitations not reflected in the ALJ's mental RFC findings.  The court finds that substantial, competent evidence supports the ALJ's physical and mental RFC findings.

Plaintiff noted that Dr. Mintz gave plaintiff a GAF of 50 in April 2010 (R. at 256), and a GAF of 45 in October 2010 (R. at 280).[4]  Plaintiff contends that these scores are not reflected in the ALJ's RFC findings.  However, standing alone, a GAF score, which can reflect social and/or occupational functioning, does not necessarily evidence whether an impairment seriously interferes with a claimant's ability to work.  See Lee v.

---

out detailed instructions, and in the ability to interact with the public (R. at 304-305).  Both Dr. Maxfield and Dr. Wilkinson opined that plaintiff should be limited to intermediate tasks (R. at 261, 306).

[3] The ALJ gave "substantial" weight to the opinions of Dr. Mintz to the extent that his opinions were consistent with the RFC findings.  As noted below, the ALJ's RFC findings are consistent with the opinions expressed by Dr. Mintz.

[4] GAF (global assessment of functioning) scores can be found in the Diagnostic and Statistical Manual of Mental Disorders.  The scores in this case represent the following:

> 41-50: **Serious symptoms** (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting), **OR any serious impairment in social, occupational, or school functioning** (e.g., no friends, unable to keep a job) .

Diagnostic and Statistical Manual of Mental Disorders (DSM-IV-TR) (4th ed., text revision, American Psychiatric Association 2000 at 34) (emphasis in original).

Barnhart, 117 Fed. Appx. 674, 678 (10th Cir. Dec. 8, 2004).
Because a GAF score may not relate to a claimant's ability to
work, the score, standing alone, without further explanation,
does not establish whether or not plaintiff's impairment
severely interferes with an ability to perform basic work
activities.  See Eden v. Barnhart, 109 Fed. Appx. 311, 314 (10th
Cir. Sept. 15, 2004).  GAF scores are not considered absolute
determinants of whether or not a claimant is disabled.  Heinritz
v. Barnhart, 191 Fed. Appx. 718, 722 (10th Cir. Aug. 10, 2006).

     Plaintiff also alleges error by failing to include in the
RFC findings plaintiff's inability to drive or operate dangerous
equipment for six hours after taking medications.  This is based
on a discharge summary from Miami County Medical Center, dated
January 3, 2012, which states that "If you have been given a
pain medication…do not drive or operate dangerous equipment for
at least six hours after taking the medication" (R. at 356-357,
emphasis added).  However, plaintiff failed to present evidence
that plaintiff is taking pain medications which require her not
to drive or operate dangerous equipment for six hours after
taking them, and there is no medical opinion evidence that
plaintiff has such limitations.

     Plaintiff argues that the ALJ failed to include Dr.
Parson's limitations of exposure to dangerous machinery and
unprotected heights to the RFC findings (Doc. 9 at 22).  This

argument is clearly without merit.  Dr. Parsons did not include
such limitations in his assessment (R. at 313).  In fact, the
ALJ added those limitations (R. at 21), which is to plaintiff's
benefit.  The ALJ does not commit reversible error by electing
to temper the limitations in plaintiff's favor.  <u>Chapo v.
Astrue</u>, 682 F.3d 1285, 1288 (2012).

     Plaintiff also argues that the ALJ erred by failing to
consider any limitations based on plaintiff's non-severe
impairments.  According to the regulations, in assessing
plaintiff's RFC, the ALJ must consider the combined effect of
all of a claimant's medically determinable impairments, whether
severe or not.  Second, the ALJ cannot simply rely on a finding
of non-severity as a substitute for a proper RFC analysis.
<u>Wells v. Colvin</u>, 727 F.3d 1061, 1065 (10th Cir. 2013).

     The ALJ found that plaintiff's impairments of irritable
bowel syndrome, fibroids and a hernia were not severe
impairments (R. at 14-15).  The ALJ previously stated that in
making his RFC finding, the ALJ must consider all of plaintiff's
impairments, including impairments that are not severe (R. at
13).  The ALJ stated that in making his RFC findings he
considered all symptoms and the extent to which these symptoms
can reasonably be accepted as consistent with the objective
medical evidence and other evidence, and considered the opinion
evidence in accordance with the regulations (R. at 17).

Plaintiff has not cited to any medical evidence indicating that these impairments would have had more than a minimal impact on her ability to work or would result in limitations in her ability to work.  Because the ALJ considered all symptoms and evidence when making his RFC findings, and considered all of plaintiff's impairments, including non-severe impairments, and because the plaintiff has not cited medical evidence indicating that these non-severe impairments resulted in limitations that were not included in the ALJ's RFC findings, the court finds that the ALJ did not err in his consideration of plaintiff's non-severe impairments.

In making his step 2 findings, the ALJ found that plaintiff has mild restrictions in activities of daily living, moderate difficulties in social functioning, moderate difficulties with concentration, persistence or pace, and no episodes of decompensation (R. at 16).  These findings in the four areas are based on the PRTF (psychiatric review technique form)(R. at 290, 300, form filled out by Dr. Parsons).  Plaintiff alleges that the ALJ erred by failing to incorporate those findings in his RFC findings.

According to SSR 96-8p:

> The psychiatric review technique described
> in 20 CFR 404.1520a and 416.920a and
> summarized on the Psychiatric Review
> Technique Form (PRTF) requires adjudicators
> to assess an individual's limitations and

> restrictions from a mental impairment(s) in
> categories identified in the "paragraph B"
> and "paragraph C" criteria of the adult
> mental disorders listings. The adjudicator
> must remember that the limitations
> identified in the "paragraph B" and
> "paragraph C" criteria are not an RFC
> assessment but are used to rate the severity
> of mental impairment(s) at steps 2 and 3 of
> the sequential evaluation process. The
> mental RFC assessment used at steps 4 and 5
> of the sequential evaluation process
> requires a more detailed assessment by
> itemizing various functions contained in the
> broad categories found in paragraphs B and C
> of the adult mental disorders listings in
> 12.00 of the Listing of Impairments, and
> summarized on the PRTF.

1996 WL 374184 at *4.  Thus, the PRTF form is used to determine

the severity of a mental impairment at steps 2 and 3 of the

sequential evaluation process, while a mental RFC assessment

form is used to determine a claimant's RFC at steps 4 and 5.

The ALJ made findings at step two in the four broad areas,

which are only for the purpose of rating the severity of a

mental impairment at steps 2 and 3 of the sequential evaluation

process.  These findings are not an RFC assessment.  The mental

RFC assessment used at steps 4 and 5 of the sequential

evaluation process requires a more detailed assessment.  Those

assessments are found in the mental RFC assessments filled out

by Dr. Maxfield (R. at 259-261), and Dr. Wilkinson (R. at 290-

292).  It was those assessments which were reviewed by the ALJ

in making his RFC findings (R. at 22).   The court finds that plaintiff's argument on this issue is without merit.

In summary, the court finds that substantial evidence support the ALJ's RFC findings.   The ALJ reasonably relied on the medical opinions in the record, and his RFC findings are consistent with the medical opinions regarding plaintiff's RFC which were rendered on or after plaintiff's alleged onset date.

**IV.   Are the ALJ's credibility findings supported by substantial evidence?**

Credibility determinations are peculiarly the province of the finder of fact, and a court will not upset such determinations when supported by substantial evidence.   However, findings as to credibility should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings.   Kepler v. Chater, 68 F.3d 387, 391 (10th Cir. 1995).   Furthermore, the ALJ cannot ignore evidence favorable to the plaintiff.   Owen v. Chater, 913 F. Supp. 1413, 1420 (D. Kan. 1995).

When analyzing evidence of pain, the court does not require a formalistic factor-by-factor recitation of the evidence.   So long as the ALJ sets forth the specific evidence he relies on in evaluating the claimant's credibility, the ALJ will be deemed to have satisfied the requirements set forth in Kepler.   White v. Barnhart, 287 F.3d 903, 909 (10th Cir. 2002); Qualls v. Apfel,

206 F.3d 1368, 1372 (10th Cir. 2000).  Furthermore, the ALJ need

not discuss every relevant factor in evaluating pain testimony.

Bates v. Barnhart, 222 F. Supp.2d 1252, 1260 (D. Kan. 2002).  An

ALJ must therefore explain and support with substantial evidence

which part(s) of claimant's testimony he did not believe and

why.  McGoffin v. Barnhart, 288 F.3d 1248, 1254 (10th Cir.

2002).  It is error for the ALJ to use standard boilerplate

language which fails to set forth the specific evidence the ALJ

considered in determining that a claimant's complaints were not

credible.  Hardman v. Barnhart, 362 F.3d 676, 679 (10th Cir.

2004).  On the other hand, an ALJ's credibility determination

which does not rest on mere boilerplate language, but which is

linked to specific findings of fact fairly derived from the

record, will be affirmed by the court.  White, 287 F.3d at 909-

910.

     The court will not reweigh the evidence or substitute its

judgment for that of the Commissioner.  Hackett v. Barnhart, 395

F.3d 1168, 1173 (10th Cir. 2005); White v. Barnhart, 287 F.3d

903, 905, 908, 909 (10th Cir. 2002).  Although the court will

not reweigh the evidence, the conclusions reached by the ALJ

must be reasonable and consistent with the evidence.  See Glenn

v. Shalala, 21 F.3d 983, 988 (10th Cir. 1994)(the court must

affirm if, considering the evidence as a whole, there is

sufficient evidence which a reasonable mind might accept as

adequate to support a conclusion).  The court can only review
the sufficiency of the evidence.  Although the evidence may
support a contrary finding, the court cannot displace the
agency's choice between two fairly conflicting views, even
though the court may have justifiably made a different choice
had the matter been before it de novo.  Oldham v. Astrue, 509
F.3d 1254, 1257-1258 (10th Cir. 2007).

In his decision, the ALJ considered the opinions of a 3rd
party witness, Latisha Hardman (R. at 22, 154-161).  The ALJ
stated that he considered her opinions, but gave them less
weight than the opinions of the medical experts (R. at 22).
Plaintiff argues that the ALJ erred by failing to state the
amount of weight he assessed to her opinions, and by failing to
even discuss what her report indicated (Doc. 9 at 25).

In the case of Adams v. Chater, 93 F.3d 712, 715 (10th Cir.
1996), the court found that it was clear that the ALJ considered
the testimony of plaintiff's wife in making his decision because
he referred to it in his opinion.  The court declined
plaintiff's invitation to adopt a rule requiring an ALJ to make
specific written findings of each witness's credibility,
particularly where the written decision reflects that the ALJ
considered the testimony.  In the case before the court, the ALJ
clearly considered the opinion of the 3rd party and stated that

he gave it less weight than the opinions of the medical experts. The court finds plaintiff's argument to be without merit.

The ALJ extensively discussed plaintiff's testimony and statements, her impairments, her credibility, non-medical opinions and medical opinions (R. at 18-23).  The ALJ's credibility findings were rather extensive (R. at 19-21).  The court finds no clear error in the ALJ's credibility analysis, and the court will not reweigh the evidence.  The court finds that the balance of the ALJ's credibility analysis is supported by substantial evidence.  See Barnum v. Barnhart, 385 F.3d 1268, 1274 (10th Cir. 2004).

IT IS THEREFORE ORDERED that the judgment of the Commissioner is affirmed pursuant to sentence four of 42 U.S.C. § 405(g).

Dated this 11th day of September 2014, Topeka, Kansas.


s/Sam A. Crow_____
Sam A. Crow, U.S. District Senior Judge